IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARTFORD CASUALTY INSURANCE CO. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DENTAL ORGANIZATION FOR | : | |
| CONSCIOUS SEDATION, LLC | : | NO. 10-3483 |

MEMORANDUM

Bartle, C.J.                                                         April 1, 2011

       Plaintiffs Hartford Casualty Insurance Co. ("Hartford") brings this diversity action against defendant Dental Organization for Conscious Sedation, LLC ("DOCS"), for a declaration that Hartford is not obligated to defend or indemnify DOCS in connection with the claims asserted against DOCS in <u>Coleman v. Dental Organization for Conscious Sedation, LLC, et al.</u>, No. 10-798 (E.D. Mo., filed Apr. 30, 2010), now pending in the United States District Court for the Eastern District of Missouri. DOCS responded with a counterclaim for a declaration that Hartford has a duty to defend and indemnify DOCS against those claims.

       Now before the court is the motion of Hartford under Rule 56 of the Federal Rules of Civil Procedure for summary judgment that it has no duty to defend or to indemnify and the motion of DOCS for summary judgment that Hartford has a duty to defend.

On March 8, 2010, Sarah Coleman filed a complaint against DOCS and various other defendants involved in DOCS's business in the Circuit Court of St. Louis County, Missouri (the "Coleman complaint"). See Coleman v. Dental Organization for Conscious Sedation, LLC, Cause No. 10SL-CC00975 (Mo. Cir. Ct., filed March 8, 2010). DOCS has since removed that action to the United States District Court for the Eastern District of Missouri. See Coleman v. Dental Organization for Conscious Sedation, LLC, et al., No. 10-798 (E.D. Mo., filed Apr. 30, 2010).

The Coleman complaint alleges that DOCS wrongfully caused the death of John Coleman, the plaintiff's husband, during a dental procedure performed by Dr. Guilan Norouzi, D.D.S., who is not a named defendant. The Coleman complaint alleges that DOCS is a company that markets and sells to dentists sedation dentistry products, including waiting room guides, manuals, DVDs, posters, wheelchairs, dental chair pads, emergency resuscitation kits, drug cabinets, paperwork, and conscious sedation protocols but not the actual sedation medicines. The Coleman complaint also avers that "DOCS offers members services designed to assess the requirements for conscious sedation in members' states of residence." In her complaint, Coleman brings claims for strict liability of unreasonably dangerous products, protocols, and instructions, negligence in the marketing and sale of its products and protocols to dentists without proper warnings, and "aggravating circumstances."

In the spring of 2010, DOCS demanded that Hartford defend and indemnify it in the Coleman suit under its Business Liability Policy and Umbrella Policy with Hartford. Hartford declined coverage of the claims raised in the Coleman complaint based on various exclusions in the two policies. This lawsuit followed.

We grant a motion for summary judgment only "where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010) (internal quotation marks omitted); see also Fed. R. Civ. P. 56(c)(2). We view the facts and draw all inferences in favor of the non-moving party. Boyle v. County of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998).

The undisputed facts are as follows. Hartford issued to DOCS a Business Liability Policy, Policy No. 13 SBA PZ 1667, Form No. SS 00 08 04 05, and an Umbrella Policy, Form No. SX 80 02 0405, which were both in effect when John Coleman underwent the dental procedures in issue. Pursuant to the Business Liability policy, Hartford agreed to "pay those sums that the insured [DOCS] becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured [DOCS] against any 'suit' seeking those damages." The Umbrella Policy provides

coverage for any damages in excess of those covered by the Business Liability policy.[1]  The policies, however, exclude certain coverages.  The Business Liability Policy, under the heading "Professional Services Exclusion," eliminates coverage for:

> "Bodily injury," "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services.  This includes but is not limited to:
> ...
> (4) Medical, surgical, dental, ex-ray or nursing services, treatment, advice or instruction;
> (5) Any health or therapeutic service, treatment, advice or instruction; [and]
> ...
> (10) Services in the practice of pharmacy.

Another exclusion in both the Business Liability and Umbrella policies, titled the "Consulting Errors Exclusion," provides that:

> This insurance does not apply to any liability for "bodily injury," "property damage" or "personal and advertising injury" arising out of:
> 1. An error, omission, defect or deficiency in"
>     a. Any test performed; or
>     b. An evaluation, a consultation or advice given, by or on behalf of any insured; [or]
> 2. The reporting of or reliance upon any such test, evaluation, consultation or advice.

---

1.  The Umbrella Policy provides that "We will pay those sums that the 'insured' [DOCS] becomes legally obligated to pay as 'damages' in excess of the 'underlying insurance' or of the 'self-insured retention' when no 'underlying insurance' applies, because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies caused by an 'occurrence.'"

In this diversity action, we apply the substantive law of the forum state, that is, Pennsylvania. Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78-80 (1938)). Under Pennsylvania law, an insurer's duty to defend and indemnify the insured may be properly resolved in a declaratory judgment action. Am. and Foreign Ins. Co. v. Jerry's Sport Center, Inc., 948 A.2d 834, 845 (Pa. Super. Ct. 2008). "In such actions, the allegations raised in the underlying complaint alone fix the insurer's duty to defend." Erie Ins. Exch. v. Claypoole, 673 A.2d 348, 355 (Pa. Super. Ct. 1996) (en banc) (emphasis added). A duty to defend against a third party complaint will arise "so long as it appears on the face of [the complaint] that the allegations 'may potentially come within the coverage of the policy,'" even if those claims are "'groundless, false or fraudulent.'" DecisionOne Corp. v. ITT Hartford Ins. Group, 942 F. Supp. 1038, 1040 (E.D. Pa. 1996) (quoting Heffernan & Co. v. Hartford Ins. Co. of Am., 614 A.2d 295, 298 (Pa. Super. Ct. 1992)); Am. Contract Bridge League v. Nationwide Mut. Fire Ins. Co., 752 F.2d 71, 75 (3d Cir. 1985) (quoting Gedeon v. State Farm Mut. Auto. Ins. Co., 188 A.2d 320, 321 (Pa. 1963)). Where there are multiple claims for relief and at least one claim could be construed as potentially falling within the scope of the policy's coverage, "the insurer [has] a duty to defend until it [can] confine the claim to a recovery excluded from the policy."

Sclabassi v. Nationwide Mut. Fire Ins. Co., 789 A.2d 699, 703 n.2 (Pa. Super. Ct. 2001). If there is no duty to defend, there, of course, is no duty to indemnify. See Scopel v. Donegal Mut. Ins. Co., 698 A.2d 602, 605 (Pa. Super. Ct. 1997). If a duty to defend exists, the duty to indemnify must await a determination whether liability was found in the underlying action with respect to any claim under the insurance policies. See Heffernan & Co. v. Hartford Ins. Co. of America, 614 A.2d 295, 298 (Pa. Super. 1992); United Services Auto. Ass'n v. Elitzky, 517 A.2d 982, 992 (Pa. Super. 1986).

Hartford contends that the claims in the Coleman complaint are excluded from coverage by both the Professional Services Exclusion and the Consulting Errors Exclusion. It maintains that the Coleman complaint alleges that the injury arose from the protocols and guidance that DOCS gave, which in Hartford's view is dental advice within the meaning contemplated by the Consulting Errors Exclusion. Hartford also argues that the Professional Services Exclusion bars coverage because the protocols on which Dr. Norouzi relied constitute professional services in the nature of medical or dental instruction. DOCS counters that the Coleman complaint alleges more than faulty protocols and that, even if only its protocols give rise to liability, such protocols do not constitute dental advice or instruction within the meaning of the policy exclusions.

The determination of the proper coverage of an insurance contract is a question of law for the court. Pac.

Indem. Co. v. Linn, 766 F.2d 754, 760 (3d Cir. 1985); 401 Fourth St., Inc. v. Inv. Ins. Group, 879 A.2d 166, 171 (Pa. 2005). The primary goal of interpretation is to "ascertain the parties' intentions as manifested by the policy's terms." Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006); see also Pac. Indem., 766 F.2d at 761. When the language of the policy is clear, we give effect to its plain meaning. An insurance policy "is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage." 401 Fourth St., 879 A.2d at 171; see also Pac. Indem., 766 F.3d at 761. Policy language is ambiguous if it is "reasonably susceptible of different constructions and capable of being understood in more than one sense." Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999) (internal quotation marks omitted). In its interpretation of the insurance contract, a court must construe any such ambiguous language in favor of coverage. See id.

In its claim for strict liability, the Coleman complaint alleges that:

> 31. DOCS as a supplier of products, protocols and instructions is liable to plaintiff under Missouri law in that:
>     a) DOCS sold a defective, unreasonably dangerous product that was in substantially the same condition at the time it was used by Norouzi, and
>     b) DOCS supplied a product that was unreasonably dangerous when put to a

>               reasonably anticipated use, and DOCS
>               failed to give an adequate warning of
>               same,
>     32.  DOCS, and thereby all defendants,
>     providing a defective and unreasonably
>     dangerous product that was sold without an
>     adequate warning, caused or contributed to
>     cause the death of John Coleman...

Hartford argues that John Coleman's death and any liability arising therefrom was precipitated only by the advice and instruction provided by DOCS and not any products provided by them.  Hartford, however, improperly reaches outside the four corners of the complaint.  The complaint alleges defects in "products, protocols <u>and</u> instructions" DOCS supplied (emphasis added).  In the present posture, we must accept this averment of the Coleman plaintiff's pleading even if it turns out to be "groundless, false or fraudulent."  <u>DecisionOne Corp.</u>, 942 F. Supp. at 1040.  Products are clearly outside of the language of either the Consulting Errors Exclusion or the Professional Services Exclusion.  Because the Coleman complaint alleges at least some claims that fall within the policies' coverage, Hartford is obligated to defend DOCS in that underlying action.  See <u>Am. Contract Bridge League</u>, 752 F.2d at 75.

      Thus, we need not decide whether any defective or deficient protocol supplied by DOCS is covered by Hartford's policies.  While we do not have before use the language of any protocol, the Coleman plaintiff clearly considers the DOCS "protocols" to be different from "instructions" which are listed separately from protocols in the complaint and which are excluded

from coverage.  Moreover, we need not decide whether the protocols constitute dental advise, which is excluded, or whether the contents of a protocol is simply information about a procedure for the dentist to consider in deciding whether to utilize it, much like the information found on the label of a pill bottle.

Whether Hartford will be obligated to indemnify DOCS in the event of an award is not ripe at this time and can only be determined if and when any such award is made.  See Heffernan & Co., 614 A.2d at 198.

Accordingly, we will grant the motion of DOCS for partial summary judgment declaring that Hartford has a duty to defend DOCS in Coleman v. Dental Organization for Conscious Sedation, LLC, et al., pending in the United States District Court for the Eastern District of Missouri.  We will deny Hartford's motion for summary judgment on the issue of the duty to defend and hold in abeyance its motion on the issue of indemnity until the underlying action is resolved.